**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

STEPHEN B. HARPER, et al.,

     Plaintiffs,

v.           CIVIL ACTION NO.   2:15-cv-03558

NAVISTAR, INC.

      Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending are Defendant Navistar, Inc.'s Motions to Dismiss [ECF Nos. 3 and 13].   The first seeks dismissal of Plaintiffs' original Complaint, while the second pertains to the superseding amended pleading.   Also pending are Plaintiffs' Motion to Disqualify Counsel [ECF No. 7] and Motion for Leave to File Surreply to the initial motion to dismiss [ECF No. 12].   For the reasons set forth herein, the Court **DENIES AS MOOT** Navistar's Motion to Dismiss the Complaint [ECF No. 3] and Plaintiffs' accompanying Motion for Leave to File Surreply [ECF No. 12], **DENIES** the Motion to Disqualify Counsel [ECF No. 7], and **GRANTS IN PART** and **DENIES IN PART** the Motion to Dismiss the First Amended Complaint [ECF No. 13].

*I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY*

The Court takes the following factual allegations from the First Amended Complaint. This dispute centers on an allegedly faulty engine installed in Plaintiffs' 2012 Monaco Vesta motorhome.   Plaintiffs Stephen B. and Laurie W. Harper purchased the motorhome on October 10, 2011 from Lazydays RV.   Lazydays is a dealership located in Florida, but, at its request, the

motorhome's purchase took place in the state of Georgia.[1]   The purchase price, apart from dealer's fees and other miscellaneous expenses, was $251,357.00.   The motorhome's engine is covered by a limited 5 year, 50,000 mile warranty issued by Navistar, the manufacturer of the engine and sole defendant in this matter.   Defects in the motorhome's engine became apparent soon after purchase.   The engine problems included loss of power, an illuminated malfunction indicator light, and emission of black smoke.   Plaintiffs presented the motorhome to Navistar's authorized dealer six times in the three years following their purchase, but the problems have not been remedied.   Plaintiffs allege that the engine defects have substantially impaired the vehicle's use, safety, and value.

Plaintiffs filed suit against Navistar in the Circuit Court of Kanawha County, West Virginia.   Their Complaint contained two causes of action for alleged violations of West Virginia's lemon law, W. Va. Code § 46A-6A-1 *et seq.* (Count I) and the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2302, 2310 ("MMWA" or "the Act") (Count II).   Following removal to this Court on grounds of diversity jurisdiction, Navistar filed its first motion to dismiss.   In an attempt to meet the arguments raised in that motion, Plaintiffs amended their Complaint to omit the alleged lemon law violation.[2]   Their First Amended Complaint is, save for a minor factual clarification, otherwise identical to the original.   Under their MMWA claim, Plaintiffs allege

---

[1] The initial Complaint alleged that the motorhome was purchased in Florida, (Compl. ¶ 4, ECF No. 1-1 at 2), but was amended to state that though Lazydays' agent was presumably located in Florida, Plaintiffs executed the purchase documents and took possession of their motorhome in Georgia.   (First Am. Compl. ¶ 4, ECF No. 8 at 2.)

[2] A timely amended pleading supersedes the original pleading, and motions directed at superseded pleadings are rendered moot.   *Young v. City of Mount Ranier*, 238 F.3d 567, 573 (4th Cir. 2001) ("As a general rule, an amended pleading ordinarily supersedes the original and renders it of no legal effect." (internal quotation marks and citation omitted)).   The Court thus **DENIES AS MOOT** the initial Motion to Dismiss [ECF No. 3] and Plaintiffs' corresponding Motion for Leave to File Surreply [ECF No. 12].

breach of the express engine warranty and breach of the implied warranty of merchantability. They seek rescission of the purchase contract and money damages.

Plaintiffs have also filed a motion to disqualify Shawn P. George, Esq., from representation of Navistar.   Mr. George formerly represented Plaintiff Stephen Harper in an unrelated legal matter and has given legal advice to both Plaintiffs in years past.   Plaintiffs fear that Mr. George obtained confidential information during the course of the prior representation that may be used to their detriment in this proceeding.   As independent grounds for disqualification, they assert that Mr. George improperly initiated contact with Mr. Harper after this case was filed.    These two outstanding motions are ripe for resolution.

## II.    MOTION TO DISMISS

### a.  Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."   Allegations "must be simple, concise, and direct" and "[n]o technical form is required."   Fed. R. Civ. P. 8(d)(1).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a civil complaint.   *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).   "[I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."   *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A C. Wright & A. Miller, *Federal Practice and Procedure* 1356 (1990)).   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   A court decides whether this standard

is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that "the defendant is liable for the misconduct alleged." *Id.* A motion to dismiss will be granted if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

   *b. Analysis*

   The MMWA regulates warranties on consumer products distributed in interstate commerce. *See Wolf v. Ford Motor Co.*, 829 F.2d 1277, 1278 (4th Cir. 1987). Under the Act, consumers have a private right of action for the failure of a warrantor "to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract," and "may bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1). Since the MMWA adopts, rather than supplants, state contract law, the Court must from the outset determine which state's laws govern Plaintiffs' MMWA claim. *See Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 291 (4th Cir. 1989) (noting that the MMWA "operates *in conjunction with state law* to regulate the warranting of consumer products" (emphasis in original)); *Naparala v. Pella Corp.*, 106 F. Supp. 3d 715, 727 (D.S.C. 2015) ("The MMWA does not create a warranty itself but is instead a vehicle for enforcing warranties created by state law." (citing cases)). Plaintiffs believe that West Virginia law should govern the dispute, while Navistar favors the law of either Florida (the location of the seller), or Georgia (the place of the contract's execution). The Court's attempts to resolve the issue have been frustrated by the failure of the parties to present

4

the correct version of the engine warranty.[3]   Choice of law principles apply only in the absence

of a contractual choice of law by the parties, *Barnes Group, Inc. v C&C Prods., Inc.*, 716 F.2d

1023, 1029 (4th Cir. 1983) (citation omitted), and while neither party suggests that Navistar's

engine warranty contained a choice of law provision, the Court is unable to confirm the matter.

By nature, the choice of law inquiry is fact-intensive.   The Court recognizes that the process of

discovery may reveal facts that bear on the question and pull the analysis in another direction.

Navistar's motion to dismiss requires a preliminary resolution of the issue, however, and the Court

will endeavor to resolve the choice of law based on the facts currently before it.

Under the rule in *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941), a

federal court sitting in West Virginia applies West Virginia's choice of law rules.   Under West

Virginia law, "[t]he law of the state in which it was made and to be performed governs a contract's

---

[3] Plaintiffs made an unsuccessful attempt to attach the engine warranty as an exhibit to the First Amended Complaint.   Attached to the pleading are two cover pages from Navistar's "Maxxforce" engine operation and maintenance manual, followed a six-page *emissions* warranty.   Plaintiffs' allegations have nothing to do with a breach of the emissions warranty, which provides for the repair and service of emission control system parts that fail to comply with government regulations.   Navistar recognizes the error and attempts to attach the correct engine warranty—a warranty that covers general engine malfunction—as an exhibit to its motion to dismiss.   Plaintiffs, however, claim that this warranty cannot be the one covering their engine because while it purports to be "[e]ffective with engines built September 1, 2009 or later," it also contains a footer indicating the warranty was revised in July 2013, almost two years after Plaintiffs bought their motorhome.   Still, the fact that the emissions warranty and the engine warranty submitted by Navistar address entirely different subject matter is not acknowledged by Plaintiffs, who have continued to insist that the warranty attached to the First Amended Complaint, the emissions warranty, governs this dispute. The Court is, frankly, flummoxed by Plaintiffs' position.   The Court must admit, however, that Plaintiffs state a plausible claim for breach of express warranty without the need to resort to the contract itself.   *See Michael v. Wyeth, LLC*, No. 2:04-0435, 2011 WL 2150112, at *7 (S.D. W. Va. May 25, 2011) ("To succeed on a breach of express warranty claim, a plaintiff must show 'the existence of an express warranty, breach of the express warranty, and damages proximately caused by the breach.'" (citation omitted)).   Because the Federal Rules of Civil Procedure do not require that a contract be attached to a pleading in a breach of contract action, *see AGSC Marine Ins. Co. v. Spectrum Underground, Inc.*, No. 8:12-cv-474-T-30TGW, 2012 WL 2087441, at *2 (M.D. Fla. Jun. 8, 2012), the Court has ignored the emissions warranty and focused exclusively on Plaintiffs' allegations to evaluate the merits of Navistar's arguments under Rule 12(b)(6).

construction when it is involved in litigation in the courts of this State." *Michigan Natl. Bank v. Mattingly*, 212 S.E.2d 754, 756 (W. Va. 1975).   Where a contract is executed in one jurisdiction but calls for performance in another, disputes over the manner or method of performance are resolved by the law of the place where the contract is to be performed. *See Jones v. Tri-Cty. Growers, Inc.*, 366 S.E.2d 726, 729 (W. Va. 1988) ("Matters bearing on the performance of a contract are determined by the law of the place in which the contract was to be performed."); *see* Restatement (First) of Conflict of Laws § 413 (1934) ("The measure of damages for a breach of contract is determined by the law of the place of performance.").   Plaintiffs' claims allege a failure on the part of Navistar to comply with its performance obligations under the engine warranty, something one may infer would occur after the purchase and largely in West Virginia.   The Court will find for the purposes of the motion to dismiss, acknowledging the minimal force of this holding for the reasons mentioned above, that it is against West Virginia's substantive law that it must measure the Plaintiffs' allegations.

Having resolved, at least for the time being, the choice of law question, the Court turns to the substance of Navistar's arguments in support of dismissal.   Those arguments fall into two main groups.   First, Navistar suggests that Plaintiffs may be obliged to pursue alternative dispute resolution before instituting the present action.   It points to Florida statutory law and the provisions of the MMWA itself as sources of law that may independently require resort to this procedure as a prerequisite to litigation.   Second, Navistar claims that the First Amended Complaint seeks to impose obligations and recover remedies that are outside the scope of the limited engine warranty.   The Court begins by responding to the first argument.

Under Florida's Motor Vehicle Warranty Enforcement Act, certain disputes arising from alleged defects in a motor vehicle must be submitted to a qualified mediation and arbitration program before the vehicle's purchaser can file a civil lawsuit.   Fla. Stat. § 681.1097.   The intricacies of the statutory scheme need not be delved into here because, for reasons identified by Plaintiffs, it is obviously inapplicable.   The Florida law governs only motor vehicles sold in Florida, *see* Fla Stat. § 681.102(14), and, according to the allegations in the First Amended Complaint, Plaintiffs purchased their motorhome in Georgia.

Navistar's alternative argument that the text of the MMWA requires resort to alternative dispute resolution is likewise unavailing.   The MMWA requires consumers to submit their claims to an informal dispute settlement procedure prior to filing suit only if such a procedure has been established by the warrantor and incorporated in the written warranty.   15 U.S.C. § 2310(a)(3) (providing that if a warrantor establishes an eligible informal dispute settlement procedure and if the requirement is incorporated into the written warranty, the consumer may not commence a civil action before resorting to such procedure).   Navistar admits that its own engine warranty does not establish such a procedure.   Rather, it suggests that the vehicle warranty issued by the motorhome's *seller* might have done so.   To the extent Plaintiffs' claims attempt to enforce the vehicle warranty against Navistar, a components manufacturer, Navistar reasons that the Court must ascertain whether the terms of that warranty require resort to an informal dispute resolution procedure before allowing Plaintiffs' suit to proceed.

The Court does not read the First Amended Complaint as asserting a claim for breach of any warranty other than the engine warranty issued by Navistar.   Navistar's interpretation to the contrary seems strained.   The First Amended Complaint explicitly avers breach of only the engine

warranty—in fact, no other warranty is mentioned.   The subject matter of their claims undisputedly relates to Navistar's alleged failure to install a functional engine in their motorhome. Though Navistar believes, as discussed below, that Plaintiffs seek remedies that are available only via breach of the vehicle warranty, their request does not justify the Court redefining the parameters of its inquiry to include a contract to which Navistar was not a party and which Plaintiffs do not allege was breached.   Relying exclusively on Navistar's admission that the engine warranty did not impose an obligation on Plaintiffs to submit their claims to alternative dispute resolution, the Court finds that the MMWA's pre-litigation dispute resolution requirements are inapplicable to this suit.

The Court's focus now shifts to Navistar's arguments regarding the remedies available under the terms of the limited engine warranty.   The MMWA provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation . . . under a written warranty, implied warranty or service contract, may bring suit for damages and other legal and equitable relief[.]"   15 U.S.C. § 2310(d)(1).   Navistar's first contention relates to Plaintiffs' claim for breach of the implied warranty of merchantability.   Arguing that no privity of contract exists between a consumer and remote manufacturer, Navistar argues that the alleged breach of implied warranty fails to state a claim upon which relief can be granted.   The Act defines the term "implied warranty" according to state law, as modified by federal standards detailed in §§ 2308 and 2304(a).   15 U.S.C. § 2301(7).   "Because §§ 2308 and 2304(a) do not modify, or discuss in any way, a state's ability to establish a privity requirement, whether privity is a prerequisite to a claim for breach of implied warranty under the Magnuson–Moss Act therefore hinges entirely on the applicable state law."   *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516,

525 (7th Cir. 2003) (citations omitted).   The Court's resolution of the choice of law issue has significant implications for this claim because, as Navistar indicates, neither Florida nor Georgia law recognizes an implied warranty of merchantability where no privity of contract exists between a buyer and warrantor.   *Mesa v. BMW of North Am., LLC*, 904 So. 2d 450, 458 (Fla. App. 2008) ("Under Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity."); *Monticello v. Winnebago Indus., Inc.*, 369 F. Supp. 2d 1350, 1361 (N.D. Ga. 2005) (absence of privity of contract between buyer and manufacturer was fatal to implied warranty claim).   West Virginia, on the other hand, "has abolished the requirement of privity of contract in an action for breach of an express or implied warranty."   *Ohio Cty. Dev. Auth. v. Pederson & Pederson, Inc.*, No. 5:09-cv-27, 2010 WL 391616, at *6 (N.D. W. Va. Jan. 26, 2010) (citing *E. Steel Constr., Inc. v. City of Salem*, 549 S.E.2d 266 (W. Va. 2001)).   Applying West Virginia law, and subject to the qualifications noted earlier, Plaintiffs' implied warranty claim must be allowed to proceed to discovery.

Navistar also asserts that it has disclaimed all remedies other than those relating to its obligation to repair or replace the motorhome's engine.   Namely, the Plaintiffs' First Amended Complaint seeks rescission or revocation of acceptance of the purchase contract, diminution in value damages, consequential damages, and incidental damages.   The MMWA only awards a return of a motor home's purchase price for a breach of a full warranty.   15 U.S.C. § 2304; *see Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004).   As pled in the First Amended Complaint, the motorhome's engine warranty is a limited one and the MMWA's substantive remedies are thus unavailable.   However, the MMWA "allows consumers to enforce written and implied warranties in federal court, borrowing state law causes of action."   *Schimmer*, 384 F.3d

at 405; *MacKenzie v. Chrysler Corp.*, 607 F.2d 1162, 1166–67 (5th Cir. 1979) (because the Act is "virtually silent as to the amount and type of damages which may be awarded for breach of an express limited warranty . . . resort to state law is proper in determining the applicable measure of damages under the Act."). As to Plaintiffs' request for rescission or revocation of acceptance, this Court has found no case on point in West Virginia regarding the availability of these remedies between a purchaser and manufacturer who was not a party to the purchase contract. Plaintiffs have not identified any.[4] The majority of courts to have addressed the question have held that a buyer is not entitled to revocation of acceptance against a remote manufacturer with whom the buyer is not in privity.[5] In *Gilbert v. Monaco Coach Corp.*, the trial court explained:

> Revocation of acceptance has the effect of returning the buyer and seller to the positions they were in before the transaction; allowing a buyer to pursue this remedy against the manufacturer, rather than the seller, does not achieve this result. If revocation of acceptance is the remedy plaintiffs ultimately desired, then they needed to file suit against the *seller,* the party with whom they are in privity.

---

[4] Plaintiffs cite to West Virginia Lemon Law for support of their request for contract rescission. (ECF No. 18 at 3 (citing W. Va. Code § 46A-6A-4)). Though West Virginia Lemon Law recognizes revocation of acceptance as an available remedy against a vehicle manufacturer, W. Va. Code § 46A-6A-4, Plaintiffs have conceded (by voluntarily abandoning their lemon law claim) that the provisions of this statute do not apply to this case.

[5] *See AG Connection Sales, Inc. v. Greene Cty. Motor Co.*, No. 08-4068-JAR, 2008 WL 4329941, at *5 (D. Kan. Sept. 16, 2008); *Stoebner Motors, Inc. v. Automobili Lamborghini S.P.A.*, 459 F. Supp. 2d 1028, 1038 (D. Haw. 2006) (rescission is not available under the MMWA in the absence of privity); *Long v. Monaco Coach Corp.*, No. 3:04-cv-203, 2006 WL 2564040, at *5 (E.D. Tenn. Aug. 31, 2006) (same); *Tolliver v. Monaco Coach Corp.*, No. 8:06-cv-856-T-30TGW, 2006 WL 1678842, at *2–3 (M.D. Fla. Jun. 16, 2006) (plaintiff's revocation of acceptance claim failed to state a cause of action against non-selling, non-privity vehicle manufacturer); *Gilbert v. Monaco Coach Corp.*, 352 F. Supp. 2d 1323, 1335 (N.D. Ga. 2004) (same); *Smith v. Monaco Coach Corp.*, 334 F. Supp. 2d 1065, 1070 (N.D. Ill. 2004) (granting motion to dismiss under the MMWA where plaintiffs sought to revoke acceptance of their motorhome against the manufacturer, who was not involved in the sale transaction); *Henderson v. Chrysler Corp.*, 477 N.W.2d 505, 508 (Mich. 1991) (the remedy of revocation of acceptance is not available against a manufacturer); *Gasque v. Mooers Motor Car Co., Inc.*, 313 S.E.2d 384, 390 (Va. 1984) (revocation of acceptance is conceptually inapplicable to persons other than the parties to the contract of sale sought to be cancelled); *Clark v. Ford Motor Co.*, 612 F.2d 316, 319 (Or. App. 1980) (citation omitted) ("A buyer may revoke acceptance only as to his seller.").

352 F. Supp. 2d 1323, 1335 (N.D. Ga. 2004).   The Court must similarly predict that West Virginia courts would not allow rescission or revocation of acceptance of a purchase contract in the absence of privity between the parties.   Doing so would "require a manufacturer to refund a purchase price it had not received in exchange for a product it did not sell to the revoking party."   *Alberti v. Manufactured Homes, Inc.*, 407 S.E.2d 819, 824 (N.C. 1991).   Given the lack of privity between the parties, and in the absence of any allegation that Lazydays was acting as Navistar's agent by executing the purchase contract, *see Clark*, 612 P.2d at 319, Plaintiffs do not state a plausible claim for rescission or revocation of acceptance of the purchase contract against the engine manufacturer. The claim must be **DISMISSED**.

Dismissal is not appropriate, however, as to the other remedies sought.   While Navistar ardently argues that Plaintiffs' damages are limited to repair and replacement, the law requires a more nuanced approach.   Where circumstances cause a limited warranty "to fail of its essential purpose," the remedies provided under the Uniform Commercial Code are not limited to the terms of the parties' agreement.   *Appalachian Leasing, Inc. v. Mack Trucks, Inc.*, 765 S.E.2d 223, 232 (W. Va. 2014) (citing W. Va. Code § 46-2-719); *Reece v. Yeager Ford Sales, Inc.*, 184 S.E.2d 722, 725 (W. Va. 1971) (finding that a limitation on consequential damages cannot be enforced where the limitation is unconscionable); *see also Jones v. Fleetwood Motor Homes*, 127 F. Supp. 2d 958, 965–66 (N.D. Ill. 2000) (despite warranty's disclaimer, consequential damages may be available if the warranty is found to have failed of its essential purposes).

The fact-intensive nature of the question makes it inappropriate for resolution at the motion to dismiss stage.   As demonstrated by the above-referenced cases, Plaintiffs state a plausible claim for damages beyond repair or replacement of the engine by alleging that the warranty has "fail[ed]

of its essential purpose." (First Am. Compl. ¶ 29, ECF No. 8 at 5.)   Resolution of this allegation involves a factual inquiry which is not well-suited for disposition through a motion to dismiss for pleading deficiency.  *See Republican Party of N.C.*, 980 F.2d at 952 (noting that the trial court must not resolve factual contests on a motion to dismiss).   In a factually similar breach of warranty lawsuit between a purchaser and vehicle manufacturer, this Court deferred a ruling on the manufacturer's motion to dismiss based on its assertion that the warranty disclaimed liability for consequential damages.  *Comm. Steam Cleaning, LLC v. Ford Motor Co.*, No. 2:09-1009, 2010 WL 1734792, at *6 (S.D. W. Va. Apr. 27, 2010).   The Honorable John T. Copenhaver, Jr. found that the question was "frequently imbued with some complexity, especially where a plaintiff, as here, asserts that a warranty has failed of its essential purpose, namely, repair or replacement that is, allegedly, ineffective."  *Id.*   In this case, analogous circumstances counsel in favor of consistent rulings.   The Court will leave Navistar's contentions regarding the damages available for breach of the limited warranty for resolution at the summary judgment stage of the case.

### III.     MOTION TO DISQUALIFY

The West Virginia Supreme Court has observed that a trial court's inherent power over its proceedings includes authority to disqualify attorneys on ethical grounds.  *See State ex rel. Verizon W. Va., Inc. v. Matish*, 740 S.E.2d 84, 91 (W. Va. 2013).   It has also given this caution:

> Disqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary.   A disqualification of counsel, while protecting the attorney-client relationship, also serves to destroy a relationship by depriving a party of representation of their own choosing.   Such motions should be viewed with extreme caution for they can be misused as techniques of harassment.

*Garlow v. Zakaib*, 413 S.E.2d 112, 116 (W. Va. 1991) (quoting *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721–22 (7th Cir. 1982)) (internal omissions and quotation marks omitted).

Plaintiffs move to disqualify Shawn George, Esq., counsel for Navistar, by claiming that he stands in violation of West Virginia Rules of Professional Conduct 1.9 and 4.2.   Mr. George previously represented Plaintiff Stephen Harper in a disability matter and provided ongoing legal advice to both Plaintiffs as recently as two years prior to the filing of this lawsuit.   He has also been long-time legal counsel for Navistar.   In this case, Navistar sought Mr. George's services as defense counsel shortly following service of Plaintiffs' Complaint.   Upon realizing that Navistar had been sued by his former clients, Mr. George emailed Plaintiff Stephen Harper personally to alert Mr. Harper of his intent to defend Navistar.   He referred to the conflict waiver that Mr. Harper had executed earlier and indicated that, in his view, he had not acquired confidential information through the prior legal representation that could be used to Harper's detriment in the pending litigation.[6]

West Virginia Rule of Professional Conduct 1.9 sets forth the duties an attorney owes to his former clients.   At issue here is subsection (c), which reads:

---

[6] The record indicates that Navistar was served on February 23, 2015, and that Mr. George sent his email to Mr. Harper one week later, on March 2, 2015.   (Not. of Removal at 1, ECF No. 1; ECF No. 11-1.)  The email reads as follows:

> Steve: Wish I wasn't writing this email.   Navistar has been a client of mine for over 25 years.   It sent the attached Complaint and asked me to defend it.   I intend to unless you show I got adverse confidential information when representing you.   I'm not aware of any. If you feel differently, please let me know what you think of this.   The version of the engagement letter I have for your disability claims has a conflict waiver in it.   (Please confirm your copy.)   This means when you hired me, you agreed then that I would not be conflicted out of representing someone else adverse to you, as long as in representing you I did not learn something confidential and adverse to you in my representation of others. Please call/write with any questions.   Regards, Shawn.

(*Id.*)

A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

1. use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or

2. reveal information relating to the representation except as these Rules would permit or require with respect to a client.[7]

W. Va. Rules of Prof'l Conduct 1.9(c).   Importantly, subsection (c) does not require the attorney's withdrawal from the adverse representation or the former client's consent.[8]   This subsection merely provides that a lawyer may not use or reveal information acquired during the course of representing a former client to that client's disadvantage.   The rule prohibits the use or disclosure of confidential information, not the possession of it.   Given the limited nature of the rule's proscriptions, Plaintiffs' motion is at very least premature.   There is no evidence that Mr. George has used his supposedly intimate knowledge of Plaintiffs' financial affairs to their detriment; furthermore, Mr. George expressly repudiates the assertion that he has any intention of doing so.

Plaintiffs alternatively base their motion for disqualification on West Virginia Rule of Professional Conduct 4.2, which states:

In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

This anti-contact rule was adopted to "provide protection of the represented person against overreaching by adverse counsel, safeguard the client-lawyer relationship from interference by

---

[7] In their briefing the parties mistakenly assert that this language comes from subsection (b) of Rule 1.9. Subsection (b) refers to the representation of clients whose interests are adverse to a client represented by the lawyer's former law firm, and is not applicable here.

[8] Rule 1.9 requires the former client's consent to the adverse representation only if the attorney intends to represent an adverse client "in the same or substantially related matter."

adverse counsel, and reduce the likelihood that clients will disclose privileged or other information that might harm their interests."   ABA Comm'n on Ethics & Prof'l Responsibility, Formal Op. 95-396 (1995).   The Rule does not implicate communication "concerning matters outside the representation."   W. Va. Rules of Prof'l Conduct 4.2 cmt. 3.

The Court finds that Mr. George's communication with his former client concerned "matters outside the representation."   *Id.*   Mr. George's email to Stephen Harper did not concern the alleged breach of warranty, the matter at the heart of Mr. Harper's lawsuit.   The duty of loyalty Mr. George owed to his former client prompted the correspondence.   Punishing Mr. George for his attempt to abide by that duty would not further the purposes of the Rule.   Mr. George made no attempt to wheedle information touching on the subject of the warranty from Mr. Harper and, contrary to the assertion of Plaintiffs' counsel, the Court finds no hint of aggression in the email. Rather, the Court sees the email as nothing more than an attorney's extension of courtesy to his former client.   While it may have been advisable for Mr. George to communicate directly with Mr. Harper's attorney, or to at least instruct that further correspondence should be filtered through that attorney, the Court cannot find that Mr. George ran afoul of the Rule by sending this email.

## *IV.   CONCLUSION*

Based upon the foregoing discussion, the Court **DENIES AS MOOT** Navistar's initial Motion to Dismiss [ECF No. 3], **DENIES AS MOOT** Plaintiffs' Motion for Leave to File Surreply [ECF No. 12], and **DENIES** the Motion to Disqualify Counsel [ECF No. 7].   The Court further **GRANTS IN PART** and **DENIES IN PART** the Motion to Dismiss the First Amended Complaint [ECF No. 13].   To the extent the First Amended Complaint seeks rescission or revocation of the

purchase contract against the remote engine manufacturer, dismissal is **GRANTED**.   In all other respects, Navistar's request for dismissal is **DENIED**.

       **IT IS SO ORDERED**.

       The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

                ENTER:      March 23, 2016

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

16